## Case No. 4,041.

### DOWELL v. GRISWOLD.

[5 Sawy. 39: 5 Reporter, 78: 10 Chi. Leg. News, 107: 1 San Fran. Law J. 235: 24 Int. Rev. Rec. 28.][1]

Circuit Court, D. Oregon. Nov. 26, 1877.

#### JURISDICTION.

1. The circuit court has not jurisdiction of a case irrespective of the citizenship of the parties, unless it arises out of a law of the United States; nor is an averment that an action arises out of such law sufficient to confer jurisdiction, but it must appear from the facts stated that it does so arise.

[Cited in Hambleton v. Duham, 22 Fed. 465.]

2. An averment that the trial of an action will necessarily involve the construction of certain acts of congress does not show that such action arises out of such laws.

3. The original jurisdiction conferred upon the circuit courts by section 1 of the act of March 3, 1875 (18 Stat. 470), does not include an action arising out of the contracts or dealings of

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 5 Reporter, 78, and 24 Int. Rev. Rec. 28, give only partial reports.]

the parties although upon its trial a question may arise involving the proper construction of a law of the United States.

[This was an action by B. F. Dowell against William C. Griswold.]

A. C. Gibbs, for plaintiff.

W. Lair Hill and H. J. Thompson, for defendant.

DEADY. District Judge. This action was commenced on October 1, 1877, to recover from the defendant [William C. Griswold] the sum of two thousand and eighty-one dollars and thirty-two cents, as money had and received by him to the use of the plaintiff [B. F. Dowell]. The complaint alleges that the plaintiff is a citizen of Oregon, and the defendant of New York.

The cause of action appears to have arisen as follows: The United States being indebted to sundry persons for services and supplies furnished to the expedition of 1854 to aid the emigrants on the southern route to Oregon and in the Oregon Indian war of 1855-6, employed the plaintiff to collect the same, giving him a power of attorney for that purpose, and agreeing that he should have a certain portion of whatever he might obtain upon such claims in full satisfaction of his services and expenses on that account. In pursuance of such authority and agreement, the plaintiff performed valuable services in that behalf, and did all that was necessary to secure the allowance and payment of such claims, when the defendant with full knowledge of the facts fraudulently purchased said claims of said persons, and conspired with certain officers of the treasury department to prevent said plaintiff from obtaining payment of the same, and thereby was enabled to and did collect them himself, and recovered and retained that portion belonging to the plaintiff as compensation for his services and expenses as aforesaid. The defendant pleaded in abatement that he is not a citizen of New York, but is, and prior to this action was, a citizen of Oregon. The plaintiff demurred to the plea, and assigned as cause of demurrer: 1. That the plea does not state facts sufficient to constitute a defense. 2. "That the plea, if true, would not oust the court from jurisdiction in this action, as the complaint avers other complete jurisdictional facts." The "other complete jurisdictional facts" is an allegation in the complaint that the cause of action arises under the laws of the United States, and necessarily involves the construction of two certain acts of congress therein named, to wit, the act of July 17, 1854 (10 Stat. 307), providing for the payment of the expenses of the Rogue River Indian war of 1853, and the act of February 2. 1871 (16 Stat. 401), providing, among other things, for the payment of the expedition aforesaid to aid the emigrants.

Assuming that "complete" facts are only facts, the question made by the demurrer is,

whether or not this action arises under a law of the United States. The constitution (article 3, § 2) provides that "the judicial power of the United States shall extend to all cases in law and equity arising under this constitution, the laws of the United States and treaties made or which shall be made under their authority." By the act of March 3, 1875 (18 Stat. 470), this judicial power was first fully vested in the circuit courts in all cases of original cognizance where the matter in dispute exceeds the value of five hundred dollars.

The allegation in the complaint that the cause of action arises under the laws of the United States, and necessarily involves the construction of certain acts of congress, is only a conclusion of law. Unless the facts stated show how it arises under such laws the allegation is insufficient to confer jurisdiction by reason of the character of the cause without reference to that of the parties.

Upon the facts stated it cannot be said that this action arises under either of the acts of congress mentioned in the complaint, and no other has been suggested out of which it could arise. The indebtedness on the part of the United States to the several persons for whom the plaintiff was acting as agent may be said to have arisen out of these acts. By them the United States recognized and assumed the payment of their several claims, or so much thereof as might be found "just and equitable." But the liability of the defendant in this action grows out of his alleged misconduct in obtaining for himself from the United States, contrary to equity and good conscience, the portion of such indebtedness which belonged to the plaintiff, as a compensation for his services and expenses rendered and incurred in and about the same; or, as was said by this court in Dowell v. Griswold, April 1, 1877 [Case No. 4,039]; "Griswold's liability arises out of his own conduct—the obtaining this money from the United States, upon which the plaintiff had a lien, if not by fraud, at least wrongfully, and with notice of the facts." This act is of recent date, and no case has been cited giving construction to its language, "arising under the constitution or laws of the United States." But similar language contained in the patent act of July 4, 1836, has been repeatedly held not to confer jurisdiction of suits between patentees and third persons growing out of the dealings and contracts of the parties thereto, with reference to the subject of the patent. Section 17 of that act (5 Stat. 124) provided: "That all actions, etc., arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries, shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States," etc.

In Wilson v. Sandford, 10 How. [51 U. S.] 100, it was held by the supreme court that a suit to set aside a contract for the use of a patent—Woodworth's planing machine—and to obtain an injunction against the future use of the same, because the contract was forfeited by the refusal of the defendant to comply with its conditions did not arise under this act, but out of the contract of the parties concerning the subject of the patent. To the same effect is Goodyear v. India Rubber Co. [Case No. 5,586]; Nesmith v. Calvert [Id. 10,123]; and Blanchard v. Sprague [Id. 1,516].

But it is also alleged as a ground of jurisdiction that the trial of this action will "necessarily involve" the construction of the acts of congress aforesaid. Whether this is so or not, at this stage of the proceedings, cannot be told. But in my judgment an action cannot be said to arise under a law of the United States, simply because its construction in some respect is or may be incidentally involved in the trial of it. For instance: In an action between citizens of the same state upon any ordinary contract, a transcript of the record of the judgment of a sister state may be offered in evidence to prove that the matter is res judicata, and thereupon the question may arise whether the same is authenticated in the manner prescribed by the law of the United States on that subject. 1 Stat. 122; Rev. St. § 905. The determination of this question necessarily involves the construction of the national law. But it can hardly be contended that under the act of 1875, supra, whenever such a question is liable to arise in any action, it may, therefore, be brought in the circuit court of the United States, without reference to the character of the parties, as a case arising under the laws of the United States. Such a case does not arise under a law of the United States, but the contract of the parties, and the general principles and rules of law applicable to such transactions. The supposed question arising in the course of the trial under the United States law is only incidental, and at most, contingent upon circumstances which do not lie at the bottom of or affect the real merits of the case. Of course, the judicial power of the United States extends to such questions, but it would appear that the only mode yet provided for its exercise is by an appeal to the supreme court from the final judgment of the state court, as provided in section 25 of the old judiciary act. Rev. St. § 709. Indeed it is not apparent how else it could be exercised than upon appeal, as in many, if not most of such cases, it is impossible, or at least very inconvenient, to foresee and determine in advance whether any such question will arise or not. I know that in Cohens v. Virginia, 6 Wheat. [19 U. S.] 378, the supreme court in construing the language of the constitution defining the judicial power of the United States, ruled that a case "may truly be said to arise under the constitution or laws of the United States whenever its correct decision depends upon the correct construction of either;" and that upon this au-

thority, which has never been shaken, a case which involves a question depending for its solution upon the proper construction of a law of the United States, is a case arising under such law, and therefore within the judicial power of the national government. But the court was construing this language with reference to the extent of the grant of such power and its appellate jurisdiction under section 25, supra, which expressly includes a case where upon a trial in a state court a question arises under a law of the United States, and is decided adversely to the plaintiff in error. The jurisdiction conferred upon this court by the act of 1875, supra, in cases arising under a law of the United States is, however, original, and not appellate. A case does not arise under such a law within the scope of that jurisdiction, unless the very right of the party springs out of or has its origin in such law. As was said by the supreme court in the case of Osborne v. U. S. Bank, 9 Wheat. [22 U. S.] 824: "The questions which the case involves must determine its character, whether these questions be made in the cause or not."

As the law stands, if in the progress of any case it appears that the right of either party or the mode of establishing or enforcing it incidentally touches upon or is upheld or, limited by a law of the United States, so far and thenceforth it becomes a case arising under such law, and therefore falls within the purview of the judicial power of the United States. How this power is to be exercised in such a case is a question for congress. Doubtless it may provide, that it shall be exercised by the circuit courts on appeal from the final judgment of the state court, or that the action may be commenced in or removed to such courts upon a showing that a question arising under a law of the United States, and necessary to its determination, is involved therein. Osborne v. U. S. Bank, 9 Wheat. [22 U. S.] 119; Story, Cont. § 1648; The Federalist, No. 82. But as at present advised, it appears to me in the light of the ruling in Wilson v. Sandford, supra, that no provision has yet been made for the exercise of the judicial power of the United States in such a case by an original proceeding in the circuit court. It does not appear, from the statement of the plaintiff's case, how his right arises under a law of the United States, or that even any question under such law will arise in the progress of the trial. The demurrer was overruled.

At the same time that the demurrer was submitted, the issue of fact made by the plea in abatement was submitted to the court for trial without the intervention of a jury. Upon the evidence, I find that the plea is true, and that the defendant at the commencement of this action was a citizen of Oregon.